```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF ALABAMA
                      SOUTHERN DIVISION
```

**NEVIS JENNINGS, JR., #151358,**   :

    **Plaintiff,**                    :

**vs.**                              :   CIVIL ACTION 20-00325-KD-B

**SEDRICK S. WOODGET,** *et al.*,    :

    **Defendants.**                  :

### REPORT AND RECOMMENDATION

Plaintiff Nevis Jennings, Jr., an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a Complaint under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). Upon consideration, it is recommended that the claims against Defendant Jarmaine Bullard be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), and that the claims against Defendants Hasheen Bennett and Terry Raybon be dismissed without prejudice for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). This action should proceed on Plaintiff's claims against Defendant Sedrick S. Woodget.

**I.   Complaint. (Doc. 1).**

Plaintiff names as Defendants, C.O. Sedrick S. Woodget, Sergeant Jarmaine Bullard, Sergeant Hasheen Bennett, and Warden

Terry Raybon. (Doc. 1 at 5-6, 11, PageID.5-6,11). Plaintiff alleges that on April 23, 2020 at 5:00 a.m., while incarcerated at Holman Correctional Facility, he needed to use the restroom following breakfast, and thus sought permission to do so from Defendant Bullard. (Id. at 4, 11, PageID.4,11). According to Plaintiff, Defendant Bullard told him to wait until the inmate count could be completed. (Id. at 4, PageID.4). Plaintiff alleges that once Defendant Woodget finished the count and gave it to Defendant Bullard, Plaintiff headed to the restroom. (Id.). Plaintiff alleges that Defendant Woodget intercepted him and "body slammed" him hard to the floor. (Id.). As a result, Plaintiff's surgically repaired hip was reinjured and swollen, his shins were scraped, and he defecated on himself. (Id. at 4-5, 8, PageID.4-5, 8). Plaintiff contends that when Defendant Bullard saw the incident, he rushed to Plaintiff to stop Defendant Woodget from causing more harm to Plaintiff and told Defendant Woodget that he had given Plaintiff permission to use the restroom. (Id. at 8, PageID.8). Plaintiff alleges that Defendant Woodget pulled Defendant Bullard aside, but within Plaintiff's hearing range, and told Defendant Bullard that they were on riot team together. (Id.). According to Plaintiff, Defendant Bullard then acted as if Plaintiff was in the wrong and got what he deserved. (Id.). Plaintiff asserts that he was allowed to use the restroom and take

2

a shower before Defendants Bennett, Bullard and Woodget took him to the infirmary. (Id.).

Per Plaintiff, he was charged with disobeying a direct order, and at the disciplinary hearing, Defendant Woodget did not give a reason for "body slamming" Plaintiff, who is fifty-four years old, walks with a bad limp in his right leg, and had hip surgery the year before. (Id. at 9, PageID.9). According to Plaintiff, Defendant Bennett, who was the disciplinary's serving officer, had no reason for attending the hearing except to cover up Defendant Woodget's "body slamming" and to intimidate Plaintiff's two inmate witnesses into not testifying. (Id. at 6, 9, PageID.6, 9).

Plaintiff contends that subsequent thereto, on May 7, 2020, Defendant Raybon approved the recommended sanctions (none of which Plaintiff identified), thereby violating Plaintiff's due process rights. (Id.). Plaintiff alleges that upon Defendant Raybon's approval, the sanctions started, although Administrative Regulation 403 requires that sanctions begin once the inmate is given his final copy. (Id.) Plaintiff contends that on May 8 and 11, 2020, the canteen manager told him that his sanctions had started, but he did not receive his final copy of his sanctions until May 13, 2020. (Id.).

Plaintiff also alleges that Defendant Raybon violated his due process rights because Defendant Raybon did not prepare an

excessive force report and neglected to attach Plaintiff's questions for his witnesses to the final copy of the report. (Id. at 10, PageID.10).  Plaintiff further alleges that he wrote Defendant Raybon about the "miscues," and that Defendant Raybon advised Plaintiff that he never received his letters. (Id.). According to Plaintiff, in the letters, he requested that the video of the April 23, 2020 incident be retained because he was sure the contents would show Defendant Bullard telling Plaintiff to use the restroom because he was calling in the count, Defendant Woodget "body slamming" Plaintiff, and Defendant Bennett talking to Plaintiff about what happened when Plaintiff was using the bathroom. (Id.).  Plaintiff alleges that Defendant Raybon destroyed the video. (Id. at 11, PageID.11)).

For relief, Plaintiff seeks compensatory and punitive damages from all Defendants. (Id. at 7, PageID.7).

**II.   Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).**

Because Plaintiff is proceeding *in forma pauperis*, the Court is required to review his Complaint (Doc. 1) under 28 U.S.C. § 1915(e)(2)(B).   Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989). A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit, id.

at 327, 109 S. Ct. at 1833, or the claim seeks to enforce a right that clearly does not exist.  Id.

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.  Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997).  To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'"  Twombly, 550 U.S. at 555, 557, 127 S. Ct. at 1965, 1966 (second brackets in original).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.

When considering a *pro se* litigant's allegations, a court gives them a liberal construction holding them to a more lenient standard than those of an attorney, Tannenbaum v. U.S., 148 F.3d

5

1262, 1263 (11th Cir. 1998), but "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168-69 (11th Cir.) (citation and quotation marks omitted), cert. denied, 574 U.S. 1047 (2014).  Furthermore, a court treats as true factual allegations, but it does not treat as true conclusory assertions or a recitation of a cause of action's elements.  Iqbal, 566 U.S. at 681, 129 S. Ct. at 1951.  In addition, a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure."  Moon v. Newsome, 863 F.2d 835, 837 (11th Cir.), cert. denied, 493 U.S. 863 (1989).

**III. Discussion.**

    **A.  Defendant Bullard.**

Plaintiff's claim against Defendant Bullard is based on his assertions that Defendant Bullard gave Plaintiff permission to use the restroom after the count was completed, intervened when he observed Defendant Woodget "body slam" Plaintiff, and later acted as though Plaintiff was incorrect when he stated that Defendant Bullard had given him permission to go to the restroom.  (Doc. 1 at 5, PageID.5).  These allegations do not rise to the level of a violation of the Constitution or federal law.  They instead show that Defendant Bullard granted Plaintiff permission to use the

restroom and then came to his aid and intervened in the "body slamming" incident.  Cf. Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986) (holding that an officer's failure to intervene in an unprovoked attack violates the Constitution such that § 1983 liability attaches); Skrtich v. Thornton, 280 F.3d 1295, 1301, 1305 (11th Cir. 2002) (applying Byrd in the prison context).

In a § 1983 action, "[a]n individual may bring . . . [an] action . . . against any person who, acting under color of state law, abridges rights created by the Constitution and laws of the United States."  Harrell v. Fla. Parole Comm'n, 479 F. App'x 234, 236 (11th Cir. 2012) (citing Maine v. Thiboutot, 448 U.S. 1, 4-5, 100 S. Ct. 2502, 2504-05, 65 L.Ed.2d 555 (1980)).  Inasmuch as Plaintiff has not alleged a violation of the Constitution or federal law against Defendant Bullard, and considering the factual context of the claims, the Court finds that Plaintiff's claims against Defendant Bullard are frivolous and as a result, Defendant Bullard should be dismissed from this action.

### B. Defendants Bennett and Raybon.

Turning next to Plaintiff's claims against Defendants Bennett and Raybon. Plaintiff's claims against these Defendants are primarily based on the disciplinary Plaintiff received for disobeying a direct order.  (Doc. 1 at 9, PageID.9).  With respect to Defendant Bennett, Plaintiff alleges that Defendant Bennett

7

served the disciplinary charge upon him and intimidated two of Plaintiff's inmate witnesses at the disciplinary hearing. (Id. at 6, 9, PageID.6, 9). With respect to Defendant Raybon, Plaintiff alleges that Defendant Raybon violated his due process rights by approving the disciplinary hearing process against Plaintiff on May 7, 2020, with the sanctions to start immediately, by failing to attach the questions for Plaintiff's witnesses to the final disciplinary report as required by regulation, by destroying the video of the incident, and by failing to prepare an excessive force report. (Id. at 9-11, PageID.9-11).

In order for Plaintiff to state a § 1983 claim against a Defendant, he must show a violation of his rights under the Constitution or laws of the United States by a person acting under color of state law. Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992). Defendants, by virtue of their employment with the Alabama Department of Corrections, act under color of state law; therefore, the first element is satisfied. The second element requires Plaintiff to demonstrate that a Defendant violated his constitutional or federal rights. Plaintiff, however, has not shown in his complaint that his constitutional rights have been violated by Defendants Bennett and Raybon.

In his allegations, Plaintiff complains of due process violations connected to his disciplinary for disobeying a direct

order. However, he has provided little information about his disciplinary conviction and sentence, and a copy of the disciplinary report did not accompany his complaint.

The Supreme Court has identified two circumstances in which a prisoner, who is already deprived of his liberty in the ordinary sense, can be further deprived of his liberty so that due process is required. Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999).

> The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. See Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); see, e.g., Vitek v. Jones, 445 U.S. 480, 492-93, 100 S. Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital). The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' Sandin, 515 U.S. at 484, 115 S. Ct. at 2300; see, e.g., Wolff v. McDonnell, 418 U.S. 539, 558, 94 S. Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process). . . .

Id.

In the context of a disciplinary, a plaintiff must, in order to show a violation of a constitutional right, demonstrate that he has a liberty interest to which due process attaches and that he did not receive the required due process. Sandin v. Conner, 515

U.S. 472, 482-83, 115 S. Ct. 2293, 2300, 132 L.Ed.2d 418 (1995). In <u>Sandin</u>, the Supreme Court held that there is no right inherent in the Constitution to be free from disciplinary segregation. <u>Id.</u> at 487, 115 S. Ct. at 2302. Then, turning to the other source for a liberty interest, the Court examined whether the State created a liberty interest to be free from disciplinary segregation. <u>Id.</u> at 485, 115 S. Ct. at 2301. The Court concluded that mere confinement to disciplinary segregation was a type of discipline that should be expected by an inmate as an incident to his criminal sentence. <u>Id.</u> However, the Court reasoned a liberty interest could be found when "an atypical and significant hardship [is imposed] on the inmate in relation to the ordinary incidents of prison life." <u>Id.</u> at 484, 115 S. Ct. at 2300. In applying its reasoning to the action before it, the Court found that the prisoner did not have liberty interest that was implicated by his 30-day confinement to disciplinary segregation as his confinement to disciplinary segregation was not a dramatic departure from his criminal sentence and "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." <u>Id.</u> at 485-86. Thus, pursuant to <u>Sandin</u>, an inmate confined to a short term of disciplinary segregation has no protected liberty interest to which the due process protections apply unless "an atypical and significant hardship [is imposed] on

the inmate in relation to the ordinary incidents of prison life." Id. at 484, 115 S. Ct. at 2300.

Thus, the Sandin Court concluded that a creation of a liberty interest, which would have entitled the inmate to due process protections, did not occur, as "[t]he regime to which he was subjected as a result of the misconduct hearing was within the range of confinement to be normally expected for one serving [his sentence.]"  Id. at 487, 115 S. Ct. at 2302; but cf. Wilkinson v. Austin, 545 U.S. 209, 224, 125 S. Ct. 2384, 2395, 162 L.Ed.2d 174 (2005)(because the Ohio inmate had a liberty interest to avoid placement in the supermax prison due to collective conditions imposing an atypical and significant hardship on an inmate, due process was required).

Although not the model of clarity, Plaintiff implicitly contests his disciplinary conviction and sentence as he complains of Defendant Bennett serving him with the disciplinary charge and Defendant Raybon approving the disciplinary conviction and sentence.  He also complains about how the hearing was conducted (with Defendant Bennett being present and intimidating witnesses), the execution of the sentence (beginning immediately), the absence of questions for his witnesses being attached to the disciplinary report, and the destruction of the incident's video.  Plaintiff's assertions are not sufficient to show that he had a liberty

11

interest and as a result, was entitled to receive due process. In other words, Plaintiff does show, through his allegations, that he suffered a grievous loss, that is, "an atypical and significant hardship [is imposed] on the inmate in relation to the ordinary incidents of prison life." Id. at 484, 115 S. Ct. at 2300. The only indication of a loss is Plaintiff's assertion that he was not able to make canteen purchases on May 8 and 11, 2020. This does not constitute a significant loss, as explained infra. And, most of Plaintiff's complaints regarding matters associated with the disciplinary hearing are not recognized due process violations, even if a liberty interest was present. See, e.g., Wolff v. McDonnell, 418 U.S. 539, 563-65, 94 S. Ct. 2963, 2978-79, 41 L. Ed. 2d 935 (1974) (in the disciplinary context due process requires advance written notice of the disciplinary violation, the factfinder's written statement as to the evidence relied on, the ability to call witnesses and present evidence if doing so will not be unduly hazardous to institutional safety or correctional goals); Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 105 S. Ct. 278, 86 L.Ed.2d 356 (1985) ("due process [is] satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits"); O'Bryant v. Finch, 637 F.3d 1207, 1213-15 (11th Cir.) (applying Wolff and Hill), cert. denied, 568 U.S. 949 (2012).

Plaintiff does not mention that he was confined to disciplinary segregation, but if he was, his confinement to disciplinary segregation did not deprive him of a liberty interest inherent in the Constitution. Sandin, 515 U.S. at 484, 115 S. Ct. at 2300. Moreover, due to absence of facts describing disciplinary-segregation confinement, Plaintiff has not shown that the confinement deprived him of a state-created liberty interest. Id. at 487, 115 S. Ct. at 2302 (a 30-day disciplinary sentence did not impinge upon a state-created liberty interest); Lekas v. Briley, 405 F.3d 602, 611 (7th Cir. 2005) (confinement to 90 days to disciplinary segregation was not an atypical and significant hardship); Rodgers v. Singletary, 142 F.3d 1252, 1253 (11th Cir. 1998) (confinement to administrative segregation for two months was not a deprivation of constitutionally protected liberty interest); Morefield v. Smith, 404 F. App'x 443, 446 (11th Cir. 2010) (a four-year confinement in administrative segregation, although lengthy, did not create a liberty interest considering that the conditions of confinement were similar to those in the general population); cf. Williams v. Fountain, 77 F.3d 372, 374 n.3 (11th Cir.) (a 12-month sentence of solitary confinement "'represent[s] substantially more atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life,' [and] we assume that [a prisoner suffering such] a liberty

13

deprivation [is] entitled to due process"), cert. denied, 519 U.S. 952 (1996); Magluta v. Samples, 375 F.3d 1269, 1282 (11th Cir. 2004) (the harsh conditions in solitary confinement under which he was held for 500 days amounted to an atypical and significant hardship to which due process attached).

Thus, the undersigned finds that Plaintiff has not shown a constitutional right or a state-created liberty interest in regards to being confined to disciplinary segregation as a result of a disciplinary sentence. Because the Court finds that Plaintiff has no liberty interest to which due process attaches, there is no need for the Court to address whether the requirements of due process were met. See McKeithan v. Jones, 212 F. App'x 129, 130 (3d Cir. 2007) (unpublished) (finding that six months' confinement to disciplinary segregation did not violate a protected interest and, therefore, Sandin prohibited the court from considering whether due process was satisfied); Hartley v. McNeil, 2008 WL 1844416, at *3 (N.D. Fla. 2008) (unpublished) (same).

As noted supra, the only loss of which Plaintiff complains as a result of his disciplinary sentence is his assertion that he was prematurely deprived of making purchases from the canteen. The Constitution, however, does not grant an inmate a right to canteen privileges. Moore v. Pemberton, 110 F.3d 22, 23 (7th Cir. 1997) (no loss of a liberty or property interest occurred when prisoner

14

received as part of his disciplinary punishment a two-week loss of commissary privileges); Walker v. Loman, 2006 WL 3327663, at *1, *3 (M.D. Ala. 2006) (unpublished) (the 90-day loss of store, telephone, and visitation privileges, recommended custody increase, and referral for possible free-world prosecution did not result in the deprivation of a liberty interest based on state-created right or on the Due Process Clause). In addition, Alabama state courts have determined a prisoner does not have a state-created liberty interest in store, telephone, and visitation privileges. Dumas v. State, 675 So.2d 87, 88 (Ala. Crim. App. 1995). An inmate's ability to make purchases from the canteen is heavily restricted while in prison, as are most aspects of an inmate's life. Sandin, 515 U.S. at 485, 115 S. Ct. at 2301. The further restriction of these privileges for a short period of time is a less severe form of discipline than confinement to disciplinary segregation. Such a restriction, therefore, is not "atypical," nor is it a "significant hardship" under the Sandin analysis, as it is a type of discipline that should be expected by a prisoner as an incident to his criminal sentence. See Id. at 475, 485, 115 S. Ct. at 2296, 2301. Plaintiff's allegations do not contend otherwise. Thus, Plaintiff does not have a liberty interest in canteen privileges.

Inasmuch as Plaintiff failed to establish a liberty interest

of which he was deprived, he has failed to state a claim for a deprivation of his due process rights against Defendants Bennett and Raybon.

As noted, Plaintiff further contends that Defendant Raybon did not prepare an excessive force report for this incident. By this allegation, Plaintiff implies that a regulation, or another source, requires such a report be prepared. However, "[n]ot every violation by a state agency of its own rules rises to the level of a due process infringement." Smith v. Georgia, 684 F.2d 729, 732 n.6 (11th Cir. 1982); see Maddox v. Stephens, 727 F.3d 1109, 1124 n.15 (11th Cir. 2013); ACLU v. Miami-Dade Cty. Sch. Bd., 557 F.3d 1177, 1229 (11th Cir. 2009). "[T]he violation of a state statute outlining procedure does not necessarily equate to a due process violation under the federal constitution. If otherwise, federal courts would have the task of insuring strict compliance with state procedural regulations and statutes." Harris v. Birmingham Bd. of Educ., 817 F.2d 1525, 1527 (11th Cir. 1987). Inasmuch as Plaintiff has not identified a liberty interest associated with the requirement that an excessive force report be prepared, and the Constitution does not require such, see Sandin, 515 U.S. at 484, 115 S. Ct. at 2300 (in the future a State may create a liberty interest "[b]ut these interests will be generally limited to freedom from restrain"), the Court finds that this claim for a due

process violation based on an unidentified regulation is not of constitutional magnitude and, therefore, fails to state a claim. Adams v. Green, 2007 WL 1663094, at *1 (M.D. Ala. 2007) (unpublished); see Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984) (vague and conclusory claims are subject to dismissal).

## IV. Conclusion.

Based upon the foregoing reasons, it is recommended that Plaintiff's claims against Defendant Bullard be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), and that his claims against Defendants Bennett and Raybon be dismissed without prejudice for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Plaintiff's claims against Defendant Woodget should proceed.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  See 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. Gen.LR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in

accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** and **ORDERED** this **3rd** day of **November, 2020.**


_____
/s/ SONJA F. BIVINS    
**UNITED STATES MAGISTRATE JUDGE**